UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO CORTEZ BUCKLEY,<br>Plaintiff,<br>v.<br>ARNOLD SCHWARZENEGGER, et al.,<br>Defendants. | Case No. 12-cv-01018-JST (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 17 |

Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed this pro se civil rights action under 42 U.S.C. § 1983 alleging violation of his constitutional rights. Specifically, plaintiff alleges that defendant SVSP Senior Hearing Officer/Lieutenant R.W. Fritz ("Fritz") refused to allow plaintiff to present witnesses and denied plaintiff access to documentary evidence at plaintiff's December 2007 prison disciplinary hearing. Plaintiff further alleges that when he appealed these purported deficiencies through the prison grievance system, defendants T. Variz ("Variz"), C.B. Jones ("Jones"), and A. Neotti ("Neotti") approved Fritz's findings. Per order filed June 11, 2012, the Court found that, liberally construed, plaintiff had stated a cognizable claim for violation of his right to due process.

Now before the Court is defendants' motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. Plaintiff has also filed an unsolicited sur-reply.

For the reasons set forth below, the Court will grant the motion.

## FACTUAL BACKGROUND

On October 6, 2007, plaintiff was issued a Rules Violation Report ("RVR") for obstructing a peace officer with use of force. (Decl. R. Fritz Supp. Mot. Summ. J ("Fritz Decl.") ¶4 & Ex. B.) The parties' accounts diverge regarding the events leading up to the report.

**A.    Defendants' Account**

The Court begins with defendants' account. According to defendants, the following events occurred.

On September 27, 2007, SVSP Officers Ornelas and Gudino were assisting maintenance workers in retrofitting plumbing in the cells in "D" Unit. (Fritz Decl. ¶3 7 Ex. A.) The officers approached plaintiff's cell and instructed plaintiff to comply with handcuff procedures so that maintenance could be performed in his cell. (Id.) Plaintiff appeared to comply by backing into the handcuff port with his hands outstretched behind him. (Id.) Officer Ornelas opened the handcuff port, and plaintiff turned around and grabbed the port with both hands. (Id.) Officer Gudino ordered plaintiff several times to release the handcuff port. (Id.) When plaintiff did not comply, Officer Gudino pepper-sprayed plaintiff in the upper torso and face. (Id.) When plaintiff still refused to release the handcuff port, Officer Gudino pepper-sprayed plaintiff again. (Id.) At that point, plaintiff released the handcuff port. (Id.)

**B.    Plaintiff's Account**

According to plaintiff, the events occurred as follows.

In the early morning on September 27, 2007, plaintiff complained to Officer Ornelas and Nurse Molly Eckhart ("Nurse Eckhart"[1]) about not having received his medication or his kosher meals in two days. (Pl.'s Decl. Supp. Opp. to Summ. J. ("Pl. Decl.") ¶3.[2]) At around 12:00 p.m., Nurse Eckhart informed plaintiff that she could not locate plaintiff's medical file and that he would have to wait. (Id.) Plaintiff began complaining of chest pains, and Nurse Eckhart walked away. (Id. ¶4.)

Plaintiff then kicked his cell door, and "several correctional officers came." (Pl. Decl. ¶5.) Officer Ornelas told plaintiff that "the central kitchen had been contacted and plaintiff would receive his kosher breakfast, lunch and dinner at 4:00 p.m." (Id.) Plaintiff asserts that Officer Ornelas was being sarcastic. (Id.)

---

[1] Nurse Eckhart is also referred to in the parties' filings as Nurse "Eckart" and Nurse "Eckert."

[2] Plaintiff's declaration is at Docket No. 31, Ex. 20.

2

1 Plaintiff then yelled to the D Unit Control Booth Officer, Officer Chavez, that he was having chest pains, and yelled "Man Down." (Pl. Decl. ¶6.) Officer Chavez then yelled "Man Back Up." (Id.) Sergeant L. Locke and Officer Ornelas then came to plaintiff's cell. (Id. ¶7.) Plaintiff "got into [an] argument with Sergeant L. Locke for challenging plaintiff's medical issue." (Id.) Sergeant Locke then instructed Officer Ornelas to "handcuff the 'asshole,' referring to plaintiff." (Id.)

Plaintiff then walked away from his cell door toward his bunk. (Id. ¶8.) When plaintiff turned back toward his cell door, Officer Ornelas "opened the food/cuff port and pepper sprayed plaintiff with one can of pepper spray and slammed the food/cuff port closed." (Id.) "Plaintiff yelled while choking, I'm dying I can't breathe I have asthma." (Id.)

Plaintiff acknowledges that maintenance department workers were retrofitting the "time flusher plumbing" in the cells "in D2 unit" on September 27, 2007. (Pl. Decl. ¶10.) Plaintiff asserts, however, that he was housed in an ADA "modified cell" in the D2 unit and that "maintenance department workers were not allowed to retrofit time flushers on [ADA] cells in D2 unit." (Id. ¶¶ 11-12.)

**C.    RVR Investigation & Hearing[3]**

As noted above, on October 6, 2007, plaintiff was issued an RVR for obstructing a peace officer with use of force in connection with the September 27, 2007 incident. On October 18, 2007, plaintiff was assigned Correctional Officer D. Schlitz ("Officer Schlitz") as an Investigative Employee ("IE").[4] (Fritz Decl. ¶5.) That same day, Officer Schlitz interviewed plaintiff about the disciplinary charges and took plaintiff' statement. (Fritz. Decl. ¶6 & Ex. B.) Plaintiff requested Inmate Lawless, Inmate Deming, plumbers "Jose" and "Denny", R.N. Malley, R.N. Jemma[5], and

---

[3] The following facts, unless otherwise noted, are undisputed.

[4] California law mandates assigning an investigative employee to assist an inmate with a disciplinary hearing where: "(1) The complexity of the issues require further investigation; (2) The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense[; and] (3) A determination has been made that additional information is necessary for a fair hearing." 15 C.C.R. § 3315(d)(1)(A).

[5] R.N. Jemma is also referred to in the parties' filings as R.N. "Jenna."

3

Nurse Eckhart as witnesses at the hearing. (Id.)

On October 23, 2007, Officer Schlitz interviewed Inmate Lawless, who occupied the cell directly above plaintiff, about his observations of the September 27, 2007 incident. (Fritz. Decl. ¶7 & Ex. B.) Officer Schlitz also interviewed Inmate Deming. (Id.) In these interviews, Officer Schlitz used questions provided by plaintiff. (Id.)

On October 23, 24, 29, and 31, 2007, Officer Schlitz contacted the Plant Operations Secretary about two plumbers who may have witnessed the incident. (Fritz. Decl. ¶8 & Ex. B.) According to plaintiff, the plumbers' names were "Jose" and "Denny." (Id.) The Plant Operations Secretary informed Officer Schlitz that there were no plumbers by that name working at SVSP. (Id.) She was unable to provide Officer Schlitz with any work orders reflecting the work due to be done on plaintiff's cell on the day of the incident. (Id.)

Officer Schlitz also interviewed and took statements from R.N. Molley and Nurse Eckhart, using the questions provided by plaintiff. (Fritz. Decl. ¶9 & Ex. B.) Finally, Officer Schlitz interviewed and took statements from Officers Ornelas and Gudino. (Fritz. Decl. ¶10 & Ex. B.)

Officer Schlitz included all of the witness statements in his report for consideration at the RVR hearing. (Fritz. Decl. Ex. B.)

The RVR hearing took place on December 4, 2007. (Fritz. Decl. ¶12 & Ex. B.) Fritz was the Senior Hearing Officer ("SHO") presiding over the hearing. (Id.) Plaintiff was present at the hearing. (Fritz. Decl. ¶13 & Ex. B.) He entered a plea of Not Guilty and made a statement. (Id.)

Earlier, plaintiff had indicated that he wanted Inmate Lawless and Inmate Deming to be present as witnesses. (Fritz. Decl. ¶13 & Ex. B.) According to defendants, plaintiff later stated that he accepted Inmates Lawless and Deming's statements as documented in Officer Schiltz's report. (Id.) According to plaintiff, however, he did not waive his right to these witnesses. (Pl. Decl. ¶16.)

Plaintiff requested that medical staff, Nurse Jemma and Nurse Eckhart, be present as witnesses. (Fritz. Decl. ¶15 & Ex. B.) Fritz denied this request because Nurse Eckhart had been interviewed by Officer Schlitz using questions provided by plaintiff and would likely offer no further relevant testimony. (Id.) Fritz also found that Nurse Jemma's had no role in the incident

4

except insofar as Nurse Eckhart had notified Nurse Jemma of plaintiff's pepper spray exposure. (Fritz. Decl. Ex. B.)

Plaintiff requested that plumbers "Jose" and "Denny" appear as witnesses. (Fritz. Decl. ¶16 & Ex. B.) Fritz denied the request given that Officer Schlitz had been unable to locate plumbers by such names. (Id.)

Plaintiff requested that Plant Operations be called to confirm whether or not there was work scheduled to be done on plaintiff's cell on the day of the incident. (Fritz. Decl. ¶17 & Ex. B.) Fritz denied the request as irrelevant to the charge of obstructing a peace officer. (Id.)

Fritz attempted to contact the officers involved in the incident. (Fritz. Decl. ¶18 & Ex. B.) He was unable to reach Officers Gudino and Ornelas, but did reach Officer Chavez. (Id.) Officer Chavez testified at the hearing. (Id.) According to defendants, Fritz deemed the Officers' reports sufficient, and plaintiff stated he did not have any further questions for Officers Gudino and Ornelas. (Id.) According to plaintiff, Fritz did not attempt to contact Officers Gudino and Ornelas and plaintiff did not waive his right to question said witnesses. (Pl. Decl. ¶19.)

Plaintiff requested documentary evidence in the form of the serial numbers of the two cans of pepper spray used on plaintiff in the incident. (Fritz. Decl. ¶19 & Ex. B.) Fritz deemed the evidence not relevant to the charge and denied the request. (Id.)

Fritz found plaintiff guilty of the charged offense based on a preponderance of the evidence. (Fritz. Decl. ¶20 & Exs. A, B.) No forfeiture of credits was assessed. (Id.)

## DISCUSSION

### I.     Motion for Summary Judgment

#### A.     Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not

based purely on information and belief but rather on personal knowledge).[6]

### B. Analysis

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556-57, 571-72 n.19.

Wolff established five constitutionally-mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

---

[6] Plaintiff has submitted both: (1) a verified complaint; and (2) a sworn declaration with his opposition.

7

The Due Process Clause requires only that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that prisons comply with their own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the Wolff standard." Id.

Plaintiff's primary contention is that he was denied the right to call witnesses and was denied access to documentary evidence at his RVR hearing.[7]

Specifically, plaintiff claims his due process rights were violated because, contrary to defendants' assertions, he never waived his right to call Inmates Deming and Lawless or Officers Gudino and Ornelas as witnesses. Plaintiff contends that Fritz arbitrarily denied plaintiff the right to question these four witnesses. Plaintiff also contends that Fritz arbitrarily denied plaintiff's request to call Plant Operations to confirm whether or not there was work scheduled to be done on plaintiff's cell on the day of the incident.

CDCR departmental rules provide that an inmate may request the appearance of friendly and adverse witnesses at a disciplinary hearing. 15 C.C.R. § 3315(e). The official conducting the hearing may refuse to call a requested witness if he or she determines that the requested witness has no relevant or additional information. Id.; § 3315(e)(1)(B). If an inmate's request for a witness is denied, the reasons should be documented. Id.; § 3315(e)(2). Review of the evidence submitted on summary judgment demonstrates that, in accordance with this policy, defendant Fritz documented: (1) plaintiff's waiver of his right to question the inmate and officer witnesses; and

---

[7] Plaintiff does make some contentions that he was given incomplete notice of the charges insofar as the RVR report he received did not include the crime/incident reports prepared by Officers Gudino and Ornelas. (Opp. at 9.) Plaintiff cites to no authority stating that constitutional notice under Wolff requires a prisoner be given copies of a crime/incident report. Further, as defendants point out, plaintiff's copy of the RVR included the crime/incident report narratives of Officers Gudino and Ornelas. Finally, even assuming there was a violation, plaintiff fails to connect any of the named defendants to the alleged violation.

(2) Fritz's reasons for denying plaintiff's request to call Plant Operations. (Fritz Decl. Ex. B.)

Even accepting as true plaintiff's assertion that Fritz's documented reasons were false or improper, plaintiff fails to show what additional information the requested witnesses could have provided had they testified at the RVR hearing. Specifically, plaintiff makes no attempt to explain what additional information Inmates Deming and Lawless could have provided that was not already in their interview statements, which Fritz considered.[8] Further, plaintiff nowhere states what additional questions he could have asked Officers Gudino and Ornelas that would have impeached the statement they made in their written reports. Finally, while plaintiff surmises that a witness from Plant Operations would have testified there was no maintenance work scheduled to be done on plaintiff's cell on the day of the incident, plaintiff provides no evidence to support such contention. In sum, although plaintiff makes the conclusory allegation that denial of the witnesses violated his right to due process, he does not proffer what the substance of their testimony would have been or how it would have aided him at his hearing.

Regarding plaintiff's claim that his due process rights were violated because Fritz denied his request to call plumbers "Jose" and "Denny," the only disputed material facts are those relating to the reasons given by Fritz in denying such request. According to the report of the RVR hearing:

> SHO denied request for plumbers and noted that Names of Plumbers were not correct and no such employees would []have any relevance with respect to this CDCR-115 and no staff witnesses are listed on the CDCR-837-B2 as Maintenance workers.

(Fritz Decl. Ex. B.)

Plaintiff asserts that these plumbers do exist and asserts that he spoke with them both in January 2008. Specifically, plaintiff states:

---

[8] While plaintiff does provide a signed declaration from Inmate Deming in support of plaintiff's opposition to the motion for summary judgment (Dkt. No. 31, Ex. 9), the declaration is an almost verbatim repetition of Inmate Deming's statement as reported by Officer Schlitz, i.e., the statement provided to Fritz at the RVR hearing.

9

> On January 15, 2008 plaintiff spoke to Mr. Jose Guerrero in Unit C4 concerning the September 27, 2007 incident when plaintiff was pepper sprayed. Mr. Jose Guerrero told plaintiff he remembered the incident and if called to testify in a court that [neither] he or any other maintenance worker on September 27, 2007 in Unit D2 ask[ed] staff to remove plaintiff from his (ADA) cell . . . and that he saw plaintiff being pepper sprayed. . . .
>
> On January 7, 2008 plaintiff spoke to Mr. Denny Horn in Unit C8 concerning the September 27, 2007 incident . . . . Mr. Denny Horn told plaintiff he remember[ed] the incident and if called to testify in court that (ADA) cell[s] were barred from having time flushers and that he was ordered by a sergeant to turn plaintiff['s] cell water off after plaintiff was pepper sprayed for kicking his cell door . . . .

(Pl. Decl. ¶¶ 20-21.)

As these statements are inadmissible hearsay, they may not be considered on summary judgment. See Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) (inadmissible hearsay may not be considered on summary judgment motion). Even if they were admissible, however, they do not dispute defendants' assertion that Officer Schlitz was unable to locate the plumbers during his investigation, and more specifically that the Plant Operations Secretary informed Officer Schlitz that there were no plumbers by the names "Jose" and "Denny" working at SVSP. (Fritz Decl. ¶8.) Nor does plaintiff submit evidence to show that defendant Fritz had any reason to believe these witnesses existed or could be located. In sum, the record supports defendants' assertion that Fritz had proper reasons to deny plaintiff's request for the plumbers as witnesses.

Plaintiff's contention that he was denied access to documentary evidence is similarly unavailing. Specifically, plaintiff argues that he was denied due process when Fritz failed to provide him with the serial numbers of the cans of pepper spray used on plaintiff. Plaintiff contends "this information is relevant because it would prove only one can of pepper spray was used on plaintiff and the pepper spray issued to Officer [Ornelas] was the only can of pepper spray used." (Pl. Decl. ¶22.) Even accepting plaintiff's contentions as true, he does not show how such evidence would have aided him at the hearing. The record supports Fritz's finding that the documentary evidence was either irrelevant or unnecessary to a fair resolution of the charge.

10

Specifically, the evidence was not relevant to explain plaintiff's alleged behavior on September 27, 2007, i.e., refusing to submit to handcuffs and taking hold of a handcuff port against officers' instructions, which interfered with the officers' ability to assist maintenance staff.

In sum, plaintiff has failed to present evidence establishing the existence of a triable issue of material fact as to whether he was denied witnesses or documents that could have offered relevant evidence in his favor at his disciplinary hearing. Accordingly, defendants are entitled to judgment as a matter of law.[9]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

The Clerk shall enter judgment and close the file.

This order terminates Docket No. 17.

**IT IS SO ORDERED**.

Dated: June 7, 2013

_____
JON S. TIGAR
United States District Judge

---

[9] As defendants are entitled to summary judgment on plaintiff's due process claim, the Court need not reach defendants' alternative arguments on qualified immunity.

11